Commonwealth ex rel. Cronhardt, *v.* Cronhardt, Appellant.

Argued April 26, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Maurice Stern,* for appellant.

*Howard M. Kuehner,* with him *Hazel H. Brown,* Assistant District Attorney, and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY STADTFELD, J., July 15, 1937:

On March 8, 1937, relator, Alice May Cronhardt, obtained an order for support against her husband, the defendant in the court below. The husband, by way of defense, offered in evidence, in the support proceeding a certified copy of a decree of absolute divorce, granted him on October 10, 1935 by the Circuit Court of Baltimore County, Maryland, on the ground of his wife's desertion.

The court below, although it filed no opinion in this case, ruled the Maryland decree invalid, stating, "I do not think we should recognize that divorce down there. It does not seem to me it was obtained in good faith, and there has been no personal service of the proceedings on Mrs. Cronhardt so she might have an opportunity to defend. Therefore I will say we refuse to recognize that divorce and consider them still married. I will make an order on him for the support of the wife." From the order so made the defendant appealed, alleging that the trial court erred in refusing to recognize the Maryland divorce.

The question here presented is whether this Maryland divorce decree was entitled to full faith and credit in the courts of this state under Article 4, Section 1 of the United States Constitution, and as such was a bar to the present action.

The evidence produced in the present action shows that the parties were married in Baltimore, Maryland, in 1902 where they lived as husband and wife for

thirteen years, until 1915, when relator left her husband, allegedly because he was a pervert, and came to Philadelphia where she has lived ever since, up to and including the commencement of this proceeding on February 2, 1937.

Shortly after she left Baltimore, he also came to Philadelphia where he has been employed or in business ever since. They lived entirely apart in Philadelphia and there never was a reconciliation after their separation in 1915.

The principal point of dispute on this appeal is whether the evidence in this support proceeding shows that his domicil at the time he applied for a divorce in Maryland was in fact in Philadelphia. She testified that after coming to Philadelphia he lived in different rooming houses in Philadelphia, was in business there and had his address in the Philadelphia telephone book; that he "lived" in Philadelphia and had a position there ever since she came there.

The record and evidence in the Maryland divorce proceedings, introduced in evidence in this case, showed that at the time that action was instituted, namely in August of 1934, he resided with his sister and her husband in Catonsville, Baltimore County, Maryland, where he had lived for fifteen or twenty years preceding, although he commuted to Philadelphia for business during the last seven years. His sister corroborated the fact that he resided during this time with her and her husband in Maryland. The record of the Maryland divorce case shows that there was no actual notice or service of process upon the wife in that action, service being by publication only.

Defendant, testifying in his own behalf, stated that since coming to Philadelphia he boarded at various places, had apartments at others, that he was first employed by a wholesale grocery firm and later went into the brokerage business on Front Street where he was

Philadelphia manager for a Pittsburgh firm, that for eight or ten years preceding the hearing he had paid for a room at his sister's in Maryland, had a bank account, his will, and some clothing there, went down there week ends and holidays, and that he never intended to make Philadelphia his permanent domicil.

So far as the record in the present case shows, the Maryland court granting the husband a decree of divorce had such jurisdiction of the parties and the subject matter as would make it necessary for the court below to grant the decree full faith and credit under the United States Constitution, Article 4, Section 1.

In this respect the present case is ruled by *Atherton v. Atherton*, 181 U. S. 155, 45 L. ed. 794, 21 S. Ct. 544, decided by the United States Supreme Court which holds that where the divorce is granted, upon constructive notice only, by the court of the state which is at the same time the domicil of the husband-libellant and the only matrimonial domicil of the husband and wife, it must be accorded full faith and credit when questioned in another state. In that case the parties lived in Kentucky after their marriage; the wife left her husband and returned to her mother's home in New York. The husband remained in Kentucky and filed a petition there for a divorce on the ground of his wife's desertion, service being made by publication as provided by the Kentucky statute. The United States Supreme Court held that as the Kentucky court had jurisdiction to grant the divorce, the Kentucky decree was entitled to full faith and credit under the Federal Constitution, and was a bar to the wife's petition for a divorce in New York.

The United States Supreme Court reiterated its ruling in the Atherton case in *Thompson v. Thompson*, 226 U. S. 551, 57 L. ed. 347, 33 S. Ct. 129. In both cases a decree of divorce, rendered by the court of a state which was both the matrimonial domicil and that

of the libellant husband, was held to come under the protection of the full faith and credit clause of the United States Constitution. The Atherton case was also referred to and the court's ruling therein affirmed in the much discussed[1] case of *Haddock v. Haddock,* 201 U. S. 562, 50 L. ed. 867, 26 S. Ct. 525 which holds that a decree of divorce rendered on constructive notice only by the court of a state which is nothing more than the domicil of the libellant, does not come within the protection of the full faith and credit clause of the Federal Constitution.

The principle regarding the jurisdiction of a state to decree a divorce in relation to the domicil of the parties therein, as announced by the United States Supreme Court in the Atherton and Thompson cases, is given in the Restatement, Conflict of Laws, Section 113 as follows: "A state can exercise through its courts jurisdiction to dissolve the marriage of spouses of whom one is domiciled within the state and the other is domiciled outside of the state if, ...... (b) the state is the last state in which the spouses were domiciled together as man and wife." Comment f. under this section of the Restatement reads: "Decree at last matrimonial domicil. If suit is brought at the last domicil where the spouses lived together, the party who has left that domicil cannot justly complain of being called back there to litigate the question of divorce *by the spouse still domiciled there* (italics supplied)."

The relator in the present case could, of course, attack the decree of the Maryland court by showing that it lacked jurisdiction of the subject matter or of the parties. It is firmly established that, where the full

---

[1] See, among numerous others, the following articles discussing the Haddock case: "Haddock Revisited", Beale, 39 H. L. R. 417; "The Validity of Void Divorces", Harper, 79 U. of Pa. L. R. 158; Various Law Review articles referred to by Goodrich, Conflict of Laws, Section 127, page 298 note 28.

faith and credit clause is relied upon to compel the enforcement in one state of a decree rendered in another, the facts essential to the jurisdiction of the court granting the decree may be contradicted. In *Thompson v. Whitman,* 85 U. S. 457, 21 L. ed. 897 the court stated (p. 469) : "On the whole, we think it clear that the jurisdiction of the court by which a judgment is rendered in any State may be questioned in a collateral proceeding in another State, notwithstanding the provision of the fourth article of the Constitution and the law of 1790, and notwithstanding the averments contained in the record of the judgment itself." This statement was later quoted with approval by the Supreme Court in *Andrews v. Andrews,* 188 U. S. 14, 35, 47 L. ed. 366, 23 S. Ct. 237, where the United States Supreme Court affirmed the action of the Massachusetts court in refusing to recognize a divorce granted by a South Dakota court to a person shown to be in fact a domicilliary of Massachusetts.

In *Haddock v. Haddock,* supra, the court stated (p. 573) "...... it is elementary that where the full faith and credit clause of the Constitution is invoked to compel the enforcement in one State of a decree rendered in another, the question of the jurisdiction of the court by which the decree was rendered is open to inquiry. And if there was no jurisdiction, either of the subject matter or of the person of the defendant, the courts of another State are not required, by virtue of the full faith and credit clause of the Constitution, to enforce such decree ......" The dissenting opinion in the Haddock case also announces this principle as follows (p. 608) : "Doubtless the jurisdiction of the court granting the divorce may be inquired into, and if it appear that the plaintiff had not acquired a bona fide domicil in that State at the time of instituting proceedings, the decree is open to collateral attack, *Bell v. Bell,* 181 U. S. 175, and a recital in the proceedings of a fact necessary to

show jurisdiction may be contradicted. *Thompson v. Whitman,* 18 Wall. 457; *Streitwolf v. Streitwolf,* 181 U. S. 179; *Andrews v. Andrews,* 188 U. S. 14." Comment (a) under Section 111 of the Restatement, Conflict of Laws, reads in part: "A finding of domicil by a court in a divorce proceeding cannot create jurisdiction. Domicil, like any other jurisdictional fact, is subject to collateral attack in any other state by a party who was not personally before the court when the decree of divorce was granted." The Supreme Court of Pennsylvania stated in *Commonwealth ex rel. v. Yarnell,* 313 Pa. 244, 251, 169 A. 370: "The right to impeach collaterally a decree of divorce made in another state by showing fraud or want of jurisdiction has been frequently recognized. See *German Savings & Loan Society v. Dormitzer,* 192 U. S. 125, 128; *Andrews v. Andrews,* 188 U. S. 14, 39; 19 C. J., page 375, sections 844, 845; *Rex v. Brinkley,* 14 Ont. L. R. 434, and *Rex v. Lolley,* 168 English Reports 779." See also, to the same effect the following authorities: Goodrich, Conflict of Laws, Section 122, p. 285; *Walker v. Walker,* 125 Md. 649, 684, 94 A. 346; *Ward v. Ward,* 115 W. Va. 429, 176 S. E. 708, 709; *in re Ferry's Estate,* 155 Misc. 198, 279 N. Y. S. 919.

That domicil is a jurisdictional fact necessary to the extra-territorial validity of a foreign decree of divorce, the lack of which may be raised in a collateral proceeding is shown by the following Pennsylvania cases, some of which involve the refusal to recognize Nevada divorces, rendered on constructive notice only: *Colvin v. Reed,* 55 Pa. 375; *Grossman's Estate,* 263 Pa. 139, 106 A. 86; *Reel v. Elder,* 62 Pa. 308; *Fyock's Estate,* 135 Pa. 522, 19 A. 1056; *Duncan v. Duncan,* 265 Pa. 464, 109 A. 220; *Heins's Estate,* 22 Pa. Superior Ct. 31; Beale, Conflict of Laws, Section 113.6, page 492, note 6. These cases also illustrate the Pennsylvania rule that a divorce granted on constructive service only

at the domicil of the libellant alone, will not be recognized as a matter of comity in this state. Pennsylvania is, of course, not required by the full faith and credit clause to recognize such a decree *(Haddock v. Haddock,* supra) and it, like New York and a few other states, refuses to do so as a matter of comity: *Colvin v. Reed,* supra, at page 383; Beale, Conflict of Laws, Section 113.6.

However, the Maryland decree offered in evidence in the present case by the defendant husband is presumed to be valid, and the burden was upon the relator to show by a preponderance of the evidence, that defendant was not in fact domiciled in Maryland when he applied for a divorce there, or that there were other facts negativing the jurisdiction of the Maryland court.

In *Delanoy v. Delanoy,* 216 Cal. 27, 13 P. (2d) 719, 86 A. L. R. 1321, the Supreme Court of California, in holding invalid as without jurisdiction, the divorce decree of a Pennsylvania court, granted the husband who left his wife in California and came to Pennsylvania, service on the wife being by publication only, stated (p. 721 of 13 P. (2d) ), "The foreign decree, regular on its face, is entitled to a presumption of validity. The burden is on the party attacking it." In *Corkum v. Clark,* 263 Mass. 378, 161 N. E. 912, although the Massachusetts court refused there to recognize a divorce obtained in the State of Washington by a husband who left his wife in Massachusetts where they had lived together, it nevertheless recognized the prima facie validity of a divorce decree of another state when it said, (p. 914) : "Commonly there is a presumption in favor of regularity of the proceedings of any court of general jurisdiction. *Robinson v. Freeman,* 236 Mass. 446, 128 N. E. 718; *Applegate v. Lexington & Carter Mining Co.,* 117 U. S. 255, 269, 6 S. Ct. 742." Compare *Commonwealth v. Parker,* 59 Pa. Superior Ct. 74 where the Superior Court, reversing the court below

in dismissing a petition by the husband to vacate a support order on the basis of a divorce obtained in Nevada, said (p. 76) "If there were nothing else in the case [than the exemplified copy of the Nevada divorce decree] to prevent full faith and credit being given to its judgment, the case of the appellant [husband] would have been made out." In that case, although the wife showed the husband did not have a bona fide domicil in Nevada, she did voluntarily appear in the divorce action, the court of Nevada therefore acquired jurisdiction of the parties and the Superior Court held the Nevada decree entitled to full faith and credit. See, also, on the question of the presumptive validity of a foreign decree and burden of proof: *Keena v. Keena,* 222 Mo. App. 825, 10 S. W. (2d) 344; *Bell v. Wedgworth,* (Tex. Civ. App.), 73 S. W. (2d) 920.

In the case at bar, the Maryland decree was a finding by the Maryland court that libellant was domiciled in that state when he applied for the divorce there. The divorce laws of Maryland [Bagby's Annotated Code, Laws of Maryland, Article 16, Sections 37 and 40] require that libellant have his "residence" in the county where the action is brought. The Maryland courts have stated that "residence" as used in the states divorce law means domicil: *Harrison v. Harrison,* 117 Md. 607, 612, 84 A. 57: *Willingham v. Willingham,* 162 Md. 539, 160 A. 280. The Maryland divorce decree therefore was prima facie evidence of the fact that libellant (defendant here) was domiciled in Maryland at the time he instituted his action. It was necessary, if relator was successfully to attack the Maryland decree that she overcome the presumption of libellant's domicil in Maryland, by positive testimony showing his domicil to have been in Pennsylvania, or elsewhere than in Maryland, at the time he sued for divorce in Maryland. While she did produce certain testimony tending to show this fact, the effect

thereof was simply to raise a doubt as to where his domicil really was, and we do not think it was sufficient to rebut the presumption arising from the rendition of the Maryland decree. Especially is this true as it was undisputed that Maryland was the matrimonial domicil of the parties and the undisputed domicil of the husband before he came to Philadelphia to work.

As Maryland was the matrimonial domicil, and also, so far as this record shows when considered with relation to the burden of proof, the domicil of the husband-libellant when he applied for a decree there, the case is ruled by *Atherton v. Atherton,* supra, and *Thompson v. Thompson,* supra; the Maryland decree must be given full faith and credit and as such is a bar to the present action [*Commonwealth v. Allen,* 79 Pa. Superior Ct. 40; *Commonwealth ex rel., Kett v. Kett,* 120 Pa. Superior Ct. 1, 181 A. 518]. Where the state rendering the decree has jurisdiction of parties to a divorce proceeding, because it is both the matrimonial domicil and the domicil of libellant, its decree must be given full faith and credit. See *Commonwealth v. Parker,* supra.

Order of the court below is reversed and the petition for the order of support is dismissed, without prejudice, however, to the right of the relator to attack the validity of the decree in divorce entered by the Circuit Court of Baltimore County, Maryland.